Good morning, Your Honors. My name is Don Barmeister. I'm here this morning representing Dolores Francis, a felon in this case, and we're here to discuss a decision by the trial court that announced in its order that the reason my client's products liability claims were dismissed or could not be allowed to go forward in tobacco was required by the logic of the Food and Drug Administration holding in front of Williamson, which held the demand of tobacco products related to the FDA's application would require the similar logic that that ban would require plaintiff's products liability cases in state courts to go forward. That's not the holding of Cipollone, which is the law that case was discussed in the FDA round of Williamson case three times. At no point was that case reversed. Cipollone is still good law. Cipollone says state law claims for product liability can go forward. But in this case the district court chose, didn't we, rely upon Cipollone, did it? It relied on the collective premise of regulatory statutes intended to keep tobacco products on the market. That's correct. The logic that the trial court relied on, Your Honor, is that the FDA holding is that the FDA itself may not regulate tobacco in any way, something that the FDA had confessed for several decades prior to that holding, but in 1996 made an attempt to assert that it could regulate. The FDA case is strong in that position. Clearly, the FDA itself may not regulate. However, that is not a conflict preemption case relative to state law claims. And there is no discussion of a case that would suggest state law claims are differently handled than they were handled in Cipollone. Cipollone is a 92 case. The FDA case is a 2,000 case. We have cases going forward on the theory of state law liability as recently as 2006 and 2008. There are significant cases both the Florida Appeals Court and the California Appeals Court has held. Products liability cases can go forward, and they're not preempted, either by the narrow preemption of the original Federal Cigarette and Playboy Act standard or any kind of implied preemption from the FDA case. What do we make of the fact that the United States U.S. Code Proviso that they relied upon in the FDA decision, Section 1311, was repealed in 2004? They relied on the six pieces of legislation, and then they relied also the support relied on the code provision said the marketing of tobacco constitutes one of the greatest basic industries of the United States without ramifying activities which directly affect interstate and foreign commerce at every point, and stable conditions therein are necessary to the general welfare. They're not preempted. Do we give any significance to that? I don't know what the significance of that would be to this case. I would think it would help your case. It certainly may, Your Honor. But you haven't focused on that. I have not focused on it. I don't want to argue a position that I think is different from the basic standard we're suggesting here, which is that clearly you cannot find in the FDA case, which is the basic case, a point where the court must rely on any holding,      I think that's a good point. I think that's a good point. I think that's a good point. No, I understand, but I think what they're saying is I understand that they're saying that the Supreme Court and FDA essentially went through an analytical process which says if we look at what Congress has done for implied preemption, not express, but implied preemption, we take a look at all of these statutory provisos they've made, including at that time also the provisions that I just quoted, all of which indicate that Congress has made it clear that it will not accept any state regulation that would have the effect of banning tobacco products from the market, and a strict liability theory, state for strict liability theory, would essentially wind up doing that because it has nothing to do with negligence. It's all just strict liability, the manufacturer's strict liability. The consequence of that, which Cipollone itself recognized, Justice Stevens, in the first part of the opinion said damage actions can have enforcement consequences, but then Cipollone restricted, of course, to advertising and labeling. But now you have FDA comes along and makes that statement of looking at, from an implied preemption standpoint, all of this panoply of legislation. So that's what I'm trying to understand, is whether we should infer from that an implied preemption of anything that would have the functional equivalent of what the FDA would have had to do, which is ban tobacco from the marketplace. I think the answer to that, Your Honor, is that I may not be tracking exactly the Court's intention in that particular area. This is a broad record before the Court in many cases issues a statute. But the claim by plaintiffs in this case does not match what Justice O'Connor said would have to follow in the FDA case, which is that the FDA regulator would have to ban all cigarettes. The claim in this case is a claim similar to that in Artees and Bullock for a products liability analysis based primarily on the Twin Park standards of Barker Law, which is the law the State adopted from California, and that that is a defect case and a design defect case. There are twin design defects here, just as there were in Barnett's and as one of those defects was found in the Bullock case. Those defects are a failure in design that is tested by the risk-benefit analysis as was sustained in the Bullock case and a failure in design as was sustained in the Arnett's case for three separate defects. Now, those defects had not been discovered in this case because I had no chance to do discovery. But presumably, Marlboro cigarettes were issued in these cases. That's the claim in the cases before this Court. The defects that exist in those cases may well exist in this case. We're not suggesting through our complaint that we would have the same preemptive effect or rather the same elimination effect of all cigarette sales in the State of Alaska because of the design defect problems with these cigarettes. The design defect problems identified in Arnett's were additional changes used to make inhaling easier, additional changes which made nicotine easier to absorb, and additional changes that increased the carcinogenic effects of certain chemicals in the tobacco. So these design defects are beyond the inherent addictive and cancer-causing cigarette characteristics of cigarettes. You're alleging design defects beyond that? That's right, Your Honor. It's not simply what cigarettes, as all cigarettes have to have, but it's an enhanced cigarette standard because of these defects as identified in Arnett. Now, I have to confess to the Court I have not had any chance at discovery, so I can't bring that forward. But given the opportunity to discover, I will, I believe, bring that forward. And we have alleged in paragraph 21 of our complaint both elements of the Quinn-Marker law, the design defect analysis, unsafe, defective, and risk greater than utility. It's the same two standards that you find in Arnett's and Bullock. Your Honor, I see I have a minute and a half left. Could I reserve a minute for rebuttal? Sure you can. You can reserve your whole time for rebuttal. Thank you, Your Honor. Sure. May I please report? John Phillips. The question is, and for this Court, did the plaintiff allege a product defect claim that was valid under Alaska law? Now, you just heard at the conclusion of this argument about a product defect claim that was not alleged in the complaint. If you read the complaint, as I have many times, there are only two allegations. The opening brief is precisely unsafe and addictive. Those are inherent characteristics of cigarettes, not simply the unnamed cigarettes. The plaintiff's deceit and smoke here, but all cigarettes. So the entire focus of implied conflict preemption is when you have a sweeping product defect claim, such as the one here, where the only defect identified in the complaint is a defect which is an inherent characteristic of the product. Isn't the test really not what's in the complaint, but what could be in the complaint? No, it's not, Your Honor. Why not? You're right. In other words, you don't think the plaintiff deserves the opportunity to amend it? Well, certainly not in this context where we're talking about removal jurisdiction based on fraudulent joinder. If we were here before the Court with 12b6 motion, the Court's always indulged the possibility of giving a person leave to amend. But we weren't here for dismissal. We were here to find out whether or not the Federal Court had jurisdiction. And in that context, this Court always evaluates removal on the basis of a complaint as filed at the time of removal. Otherwise, it would become an entirely manipulative process. I could amend the complaint based on what the Court said, and jurisdiction would not exist. That's not the standard. Well, you're the one trying to create Federal jurisdiction here, aren't you? That's true, Your Honor. But we don't readily, if anything, touch the presumptions or against creating some circumstance that would create Federal jurisdiction. You're trying to create Federal jurisdiction by knocking out what, under state law, could well be a legitimate defendant. You're right. And as I understand it, because I want to make sure I understand your argument, you are saying that this Court should say that a purported state liability, product liability case that purports to sound in strict liability, is implicitly preempted, implicitly, a second implicitly, by the FDA decision in Brown v. Williamson. Because there is no, given Cipollone, or Cipollone, however it's pronounced, which have been narrowly drafted, written by the Supreme Court to limit to advertising and labeling, you're saying that the result in this case would be you can't bring a strict liability case in state courts, based as the way it was alleged in this case, based on the FDA case, which had to do with agency jurisdiction. I just have two questions in that, Your Honor. I want to address both of them. The first point, I think, just really relates to the related question that the judge was talking about, Judge Tshishima, relating to the pleading standards. And all I'm saying in that respect is what you heard about I will have a chance to discover the defect at a later point in time is not noticed pleading standards in Alaska or anywhere else. Certainly not in light of Bell Atlantic v. Twombly by the United States Supreme Court. I'm trying to play off Judge Tshishima's question, too. You're saying if this were a 12B6 case, then leave to amend would have been given. And yet the consequences of your argument is he doesn't get a chance to leave to amend and narrow his claim down. We are going to declare as the Ninth Circuit that a broadly pled unamended complaint is preempted implicitly by the FDA decision. Well, I want to get to the implicit preemption point. Before leaving that, Your Honor, what I am saying is that when a party pleads an overly broad product defect theory that identifies in the complaint as the defect, this is not a forgotten or omitted defect, the defect is unsafe and addictive. That's what's playing. And then articulates only that argument throughout four rounds of briefing until that oral argument in the Ninth Circuit, counsel says, I think I can find a real defect that would not be so sweeping if you allow me to make discovery. That does not meet those fitting standards and one does not, as an appellate court, permit that for purposes of challenging the removal of jurisdiction of the court. What about, excuse me, counsel, what about the allegations that there are efforts to mislead the public? Isn't that... Well, if you look at their opening brief, Your Honor, and again, this is a waivable event, but you can't just keep changing your argument before an appellate court. If you look at the opening brief, they identify design defects of being unsafe and defective. There is a count for a reckless failure to warrant. You will not find it defended in the district court and you will not find it defended in the opening brief on appeal. So if we had had a failure to warrant claim, which was count three in the complaint, we would be having a different discussion than if counsel had not focused solely on product defect based on a design defect and tried to defend that throughout. You're right. There is a claim for failure to warrant or, you know, recklessly concealing and so forth, but we put an evidence on that with respect to the last commercial corporation. We put in arguments relating to that related to the remand motion, and they were unresponded to, which is why the district court said, apparently, the plaintiff is limiting their argument against fraudulent joinery. Should I bring you back to one of your statements that you made? Yes. I'm looking at paragraph 21, and it says, not that they are unsafe and addictive, it says unsafe and defective. That's right, Your Honor. When I said addictive, I was referring to paragraph 39. Yes. We're in the products liability count, right? That's right. But there's also an addiction claim on paragraph 39, and it says they're unsafe and defective. But what's a defect? Well... Under pleading standards, you have to identify the defect. Is that Alaska law? Absolutely. And I'll cite to you the case that you should look at in that regard, because this is the point that was made in the reply brief. The case is... Valdez Fisheries, a 2002 case, 45 Pacific 3rd, 657. And I'll quote very briefly. Modern notions of notice pleading notwithstanding, a plaintiff is nonetheless required to set forth factual allegations respecting each material element necessary to sustain recovery. As to unplead theories, the court said, the court need not conjure up unplead allegations or contrive elaborately arcane scripts to save a complaint for dismissal. Now, if that's the case, I'm still coming back now to Judge Tashima's point, is if this were in state court and you were making that objection, would the state court throw him out for failing to plead with specificity, or would they be given leave to amend? Your Honor, he could be thrown out or would leave to amend. Without prejudice, if I were a trial court, I would give him leave to amend. Yes, and so now we're over on federal side where you've removed it, and why should a federal district court not provide leave to amend to avoid having to then go on to a ruling which we're being basically asked to make off of an over-generalized complaint? Why should we launch into making new law and extending Brown and Williamson under those circumstances? Well, let me turn to the new law point in a moment. Let me simply say this, Your Honor. There is a difference when one's evaluating whether or not a complaint is going to be dismissed on 12b-6 and leave to amend, and whether one is going to be evaluating the jurisdiction of the federal court. And in that context, this court repeatedly, as all other courts have said, confines their discussion to the question of what does the complaint say at the moment of removal? If you did, as you are suggesting, allow someone to say, well, you didn't do it right. Will you amend, and then I'll send it back to state court? You would be allowing and permitting plaintiffs or any other party trying to avoid federal court jurisdiction to manipulate the process. Well, counsel, let me just tell you, speaking for myself, the idea of us crafting an opinion that says there's fraudulent joinder because Supreme Court law has implicitly now said that Congress implicitly has preempted state product liability claims that are grounded in the simple notion, as you're characterizing it, as unsafe and addictive when the pleading talks about unsafe and defective. It seems to me that we're bending over backwards. I mean, it analogizes to the constitutional avoidance jurisprudence. I don't really feel really comfortable using this as the vehicle to create law that I'm sure you'd like to have, but I'm not sure I'm prepared to give it. Let me make two points. My time is almost out. Now, my response to that, Your Honor. First, you are absolutely right that my argument is not based on all product defect claims being implicitly preempted by FDA versus Brownlees. That's not the argument. I've even given you cases which show where someone actually cited two specific attitudes and so forth where the defective were fixed would not result in the elimination of the sale of cigarettes. That's not an implied conflict preemption case. It's not this case. I rely upon the overbroad allegations of this plaintiff. So, with respect to implied conflict preemption, it is this claim we're evaluating, not the general. And then second, with respect to the question of Your Honor being uncomfortable with the notion of not being allowed to let a plaintiff to amend their complaint when they have done it for purposes of removal of jurisdiction, I have the burden before the district court, but it's based on that complaint. And if you read the briefs that this plaintiff made throughout the district court for purposes of the district court's analysis of the question, they never mentioned any of these potential defects that we're talking about. And I ask you finally, because my time is up and I apologize, is it prudent for a court to permit a plaintiff to allege a defect and not know what it is? Because that's what you just heard. Thank you. Okay. I'm not responsible. As far as I'm aware, this was a case that came out approximately four to six months before our complaint was filed. So it's prudent to look at these important cases and what cases should go forward based on that evidence but not have it in your hand. I think the answer has to be no, yes. We need discovery to show what has happened. Did you ask for leave to amend at any time? We did not, Your Honor. We have pleaded a well-fled case under the notice pleading law of the state of Alaska. If you look at paragraph 21, it relates to a whole course under the Hartford Law standard for notice pleading or rather standard for product defect pleading. We have alleged unsafe, defective, and risk greater than utility. Both standards meet the consumer product safety or rather the unreasonable risk to the consumer. It has to be also... I'm sorry, you say you've alleged? I'm sorry. Where have you alleged that? I think we're looking at paragraph 21, Your Honor. What is your response to Mr. Phillips' case? He cited that even under Alaska's notice pleading rule, at least in some cases, you've got to allege some facts in order to give notice of what your claim is. That's correct. What is the defect? There's no notice of what the defect is, is there? There is, Your Honor. And the defect is here in paragraph 21. It's alleged in two separate ways. One is it presented a risk of plaintiff's deceit and was far greater than any social utility. The second is that it's unsafe. No, no, no, wait a minute. That may be the result. What's the defect? The standard, as in Alaska fitting law, in notice pleading states where you plead negligence, you're permitted to plead negligence as noticed. Here, defect is pled as noticed. Going into the specific type of defects would suggest that we're not going to argue each of the defects that are available. There are three types of defects available under our law. Well, what do you say the case Mr. Phillips cited, which is an Alaska case, doesn't apply to your case? I don't believe the case is going to hold precisely as it was argued to the court. We have cited a notice pleading case as well in our brief. We believe that notice pleading standards are going to be met by this type of pleading. The notice that is required is that we give a short and simple statement of the conduct that was alleged. We've alleged, as was done in the Bullock case, both in paragraph 16, 17, and 18, false and misleading concealments. Those concealments, when tied to the defects claimed in paragraph 21, would meet the same test that was identified in Bullock as a failure to meet reasonable consumer expectations by virtue of the subterfuge of changing those expectations of misleading the public. As to the risk greater than utility that is specifically pled here in notice pleading standards, to have to go forward further than that is not necessarily in your last quote. All right. All right. Case argued and submitted. Thank you both, counsel. Thank you. All right. The next case on calendar is Munn versus University of Alaska.
judges: Nelson, Tashima, Fisher